TERRELL, Justice.
Petition of the Florida Bar prays that Section 1, Article VIII of the Integration Rule, 31 F.S.A. as follows:
‘T. Every member, both active and inactive, shall pay annual dues of Five Dollars to the Secretary-Treasurer on or before January 1st of each year, and shall also file with the Secretary-Treasurer a statement setting forth his business and residence addresses and any other information that may he reasonably required 'by the Board of Governors.”
Be amended to read:
“On or before January 1st of each year every member of The Florida Bar shall pay annual dues, in such amount as shall be set at an annual meeting to the Secretary-Treasurer; and shall also file with the Secretary-Treasurer a statement setting forth his business and residence addresses and any other information that may be reasonably required by the Board of Governors; provided that for the calendar year 1953 the annual dues shall be in such amount, not exceeding $10.00, as shall be set by the Board of Governors.”
The petition was thoroughly presented at a meeting held November 5, 1952, notice of which was given through the medium of the Florida Law Journal. Representatives of the Bar Association of the Tenth Judicial Circuit, the Third Judicial Circuit, the DeSota County Bar Association, the Marion County Bar Association and members of the Levy County Bar, appeared in person or by petition to resist approval of the proposed amendment to the Integration Rule.
The real point raised by petitioner is whether or not each member of the bar shall hereafter be required to pay such dues annually as may be fixed by the annual meeting oí the Bar, provided that for the calendar year 1953 the dues shall be set by the Board of Governors, not to exceed ten dollars. In support of this request petitioner points out that for the year 1951 the total receipts of The Florida Bar were $27,729.57 and its total expenditures were $28,781.59; that the receipts and expenditures for the year 1952 will show an even greater disparity on account of the continued increase in the expense of conducting the duties and activities of the Integrated Bar.
It is further pointed out that Article XI, Integration Rule of The Florida Bar, regulating disciplinary procedure, requires the Board of Governors and the Grievance Committees of the various Circuit Courts to investigate all charges of unprofessional conduct. In one of the large Circuits of the State it is shown that 119 complaints of unprofessional conduct have been filed with the Grievance Committee, that the Committee has conducted 136 hearings in response to these complaints, that 96 of them were dismissed because found to be groundless; 13 of them were withdrawn or found to be without the pale of committee jurisdiction and that 10 are pending. *22 on formal hearing. The cost of court reporters service in these hearings alone was $133.
The record of the Board of Governors discloses that for the year 1950, it considered 24 complaints of unprofessional conduct against attorneys; for the year 1951 it considered 46 such complaints and during the past 9 months of 1952, it has considered 42 such complaints; that 11 formal complaints against attorneys have 'been filed in the Supreme Court; that referees have been appointed in 9 of these cases; that in 6 of them the referee has conducted hearings and taken testimony and that in two of them referees have not yet been appointed. The net result of these cases before the Supreme Court has been: one disbarment, two suspensions, two cases dismissed on recommendation of the referee, and six.cases still pending.
The three preceding paragraphs give, some idea of the labor and expense the Grievance Committee and the Board of Governors have been put to in processing charges of unprofessional conduct. It is estimated that the cost of prosecuting one of these cases will run from $1200 to $1500 when concluded. It is pertinent to observe that prior to the integration of. the bar, disciplinary proceedings were conducted as authorized by Chapter 454, Florida Statutes 1951, F.S.A., and their cost was borne in whole or in part from public funds. It cannot be gainsaid that the work of the Grievance Committee is one of the, most important duties imposed on the.Integrated Bar, and certainly it is the most laborious and thankless. So much for the expense of the duty imposed on the Integrated Bar.
Now let us consider the expense of some of the professional projects undertaken by, it. For the year 1952 the Integrated Bar-budgeted $1500 for the purpose of conducting a Legal Institute Program, $497.70 of which has been spent fo,r the publication of programs and the dissemination of literature to impress the merit, the value, and the importance of attending these institutions. The Integrated Bar has also embarked -on a public relations program for which it has budgeted $4400 for year 1952. It is estimated that an effective program of this kind will cost at least $10,000 to $12,000'. One primary purpose of such program is to create a better understanding of the way justice is administered.
The work of the committee on American Citizenship and kindred activities is also-receiving the attention of the Integrated Bar. The purpose of such professional projects is to make the public more sensitive to the responsibility that citizenship in a democracy imposes on the individual and to make the Bar more sensitive to the-fact that the law practice is first of all an avenue for the administration of justice; that the public is vitally interested in the manner in which it is administered; that the Bar is clothed with a trust to administer it fairly and properly; and that any such thing as a proprietary interest the lawyer may claim in the law practice is secondary to the public trust imposed on him.
' The objections voiced to the proposed amendment are: (1) that all amendments which so vitally affect the bar should originate in the Circuit Court Bar Associations where they can be thoroughly explored by the bar on a level-that will invoke the views of a great many more lawyers than would be invoked at a State Bar Association, attended by a comparatively small number. This, it is contended, would be a much more democratic and satisfactory method of amending the rules; (2) the Florida Bar shottld not toe clothed with arbitrary power to raise the annual dues, but that if vested with power to do- so at all, a ceiling should be placed on the amount imposed; (3) respondents challenge the statement of The Florida Bar that its objectives cannot be accomplished with the sum raised from a membership fee of $5 annually. They further contend that the objectives of the bar should be- supported by voluntary contributions, and some of them say they are convinced that the Integrated Bar is costing more than it is contributing in benefits to the'membership of the Bar.
What we have pointed out with reference to disbursements and cost of services that the Integrated Bar is per- *23 forming or proposes to perform in tiie immediate future is a complete answer to the charge that the objectives of The Florida Bar can be accomplished with the sum raised from a membership fee of $5 annually. There is no suggestion of waste or extravagance, that the services rendered are not desirable, or that they are costing too much; yet it is conclusively shown that the Bar is operating in the red.
One of the primary objectives of the Integrated Bar was to bring every attorney into the organization in order that he might have a part in and bear his share of the burden of giving these and other services to the bar and the people. To contend that such services should be supported by voluntary contributions is equivalent to contending that those who do not choose to contribute have no responsibility to the bar or the public — to say, in other words,, that the law profession is nothing more than a trade to make a living. There certainly could be no objection on the part of any lawyer who is sensitive to the duty his profession is charged with, to meet his share of the burden. The services that the Integrated Bar contributes to the profession and the country are measured in intangibles that cannot be valued in dollars, like one can value a fat hog or a fat steer when placed on the scales. The value of a school or a church in the community cannot be measured in dollars but we realize their intangible worth and contribute thousands of dollars annually to their support. The services rendered by the Integrated Bar of Florida are not unlike those being rendered by the Integrated Bar in other States; they are advocated and supported by the best professional thought in the country and are considered essential to the well being of the profession.
In a democratic society like ours there can be no meritorious resistance to- the contention that proposals to raise annual dues or amend the rules in other respects that so vitally affect the bar should originate in the Circuit Court Bar Associations. It is a fact to be deplored that only a small percentage of the bar attend the annual meeting while the Circuit Court Associations are more accessible, making it much easier to secure a composite expression of the bar. The delegates to the State Bar Association should be armed with an expression from their Circuit Associations when they know they are going to be called on to decide such questions. From the notice in the Florida Law Journal every Circuit Court Association was advised of the proposed amendment, and at least four Circuit Court Associations had representatives before the court who voiced their objections to the proposal.
Historically at least, there may be support for the contention that if permission is given to raise the annual dues, a ceiling should be imposed on the amount fixed. When the lawyers voted overwhelmingly in 1948 to integrate the Bar, it did so on condition that dues of $5 an-' nually would be exacted of each member. This amount should not be disturbed prior to a showing of good cause for doing so. We are of the view that ample showing has been made to warrant authority for raising the annual dues. The services being rendered by the Integrated Bar are such as will enlarge its efficiency, improve personal relations, create a better understanding between the bar and the public and enlarge mutual respect on the part of the bar and the public. These . services are costing more than the present revenues of the bar will pay for. There are reasons for some of these services in Florida that exist in very few, if they do in any other state in the Union. For the last decade the population of Florida increased 46 per cent. This growth of .population has increased the problem of discipline, it has brought many new lawyers to the State and has complicated the problem of informing the bar and keeping it abreast of professional changes and developments.
In order that coordination of effort be secured in meeting the responsibility of the bar to the profession and the public, The Florida Bar, at the Annual Convention in June, 1952, adopted a six point long range objective, (see page 279, July number, Flor *24 ida Law Journal). These objectiv.es have to do with: (1) the preservation of.representative government in the United States;. (2) the promotion of facilities to furnish legal services to all at a cost within their ability to pay; (3) the improvement of the administration of justice; (4) the maintenance of high standards of legal education and professional conduct; (5) preservation of the respect and confidence of the public itl the bar through high ethical standards; (6) service to' the practicing attorney by correlating the activities of the American Bar Association with the State and local Bar Associations. These are worthy objectives, for which the Florida Bar has been striving a long time. It is not amiss to point out that in commendation of its effort to accomplish these objectives, the House of Delegates of the American Bar Association, at its September Meeting, in San Francisco, .1952, awarded The Florida Bar a certificate of merit for its outstanding and constructive work in this field. The extent to which these objectives become a' reality depends on the co-operation, the sympathy and financial aid of every member of the Bar.
The prayer of the petitioner is granted and Section 1, Article VIII of the Integra-r tion Rule is hereby amended to read as follows: On or before January 1st of each year every member of The Florida Bar shall pay annual dues to the Secretary-Treasurer in' such an amount as shall be set at an annual meeting, and shall also file with the Secretary-Treasurer a statement setting forth his business and residential addresses and any other information that may be required by the Board of Governors, provided that at no annual meeting shall the dues be fixed at more than $10 per annum and that for the year 1953 the annual dues may be fixed by the Board of Governors at an amount not to exceed $10.
It is so ordered.
SEEKING, C. J, and THOMAS, HOB-SON, ROBERTS, MATHEWS and DREW, JJ., concur.